COURT OF APPEALS

                                                 SECOND DISTRICT
OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-243-CR

 

 

ANDREW DAVID NEWMAN                                                               APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

              FROM
THE 297TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I.
Introduction

In
three points, appellant Andrew David Newman appeals his conviction for
aggravated robbery, asserting that the trial court abused its discretion by
denying his motion for mistrial, abused its discretion by admitting evidence of
his prior convictions at punishment, and erred by overruling his objection to
the State=s
comment on his failure to testify at punishment.  We will affirm.








II.
Factual and Procedural Background

One
morning in September 2006, Lucia Milan was working as a cashier in her family=s
small convenience store, which was located across the street from her parents=
house.  Newman came into the store that
morning, purchased a coke, and then left. 
He returned to the store about thirty minutes later, inquired about a
public restroom, and left the store once again. 
Within the hour, Newman returned to the store a third time, walked
behind the counter, and approached Milan. 
Newman produced a hammer from behind his back and began repeatedly
hitting Milan over the head with it while telling her over and over, AGive
me the money.@  Milan covered her head with her hands and
told Newman she would give him the money, but Newman continued to hit her with
the hammer even after she fell to the floor. 
Newman stopped hitting Milan and began climbing some shelves to reach a
security camera, at which time Milan was able to escape the store and go across
the street to her parents=
house.  A neighbor saw Milan limp out of the store, screaming and covered
in blood, and then saw a man walk out of the store and calmly walk down the
street with a hammer in his hand.  No
money or property was taken from the store. 








Milan
suffered numerous wounds to her head and hands, multiple broken bones in her
left hand, and permanent tendon damage to her left hand.  Milan later identified Newman as her
assailant based on a photo lineup, and police arrested him.  A jury found Newman guilty of aggravated
robbery with a deadly weapon, and after considering evidence of his prior
convictions, assessed his punishment at ninety-nine years=
confinement.  The trial court sentenced
him accordingly.  This appeal followed.

                                         III.
Motion for Mistrial

In
his first point, Newman argues that the trial court erred by denying his motion
for mistrial after the prosecutor made a misstatement of the law during closing
argument at the guilt-innocence phase of trial. 
The following transpired during the State=s
closing argument:

[Prosecutor]:
One of the other things the judge did mention to you is that there is a
lesser-included offense of aggravated assault with a deadly weapon in this
charge.  We talked about it at the jury
selection as well.  One of the things I
wanted to point out to you there is you don=t get to that charge unless you=ve found him not
guilty of aggravated robbery, that you consider aggravated robbery first and
only if you are beyond a reasonable doubt unanimous that he=s not guilty of
aggravated robbery do you even consider the second charge ofB 

 

[Defense
Counsel]: I object.  That is an incorrect
statement of the law. . . .  The jurors
have been instructed if they have a reasonable doubt as to whether he=s guilty of
aggravated robbery, they must consider the lesser.

 

[The Court]: I=ll sustain.

 

[Defense
Counsel]: The prosecutor has implied they have to find him innocent.

 

[The
Court]: I=ll sustain that
particular objection.  The jury has been
properly instructed in the jury charge.

 

[Defense
Counsel]: I=m sorry.  Move for mistrial.

 

[The Court]: Denied.








The State agrees that the
prosecutor misstated the law but contends that Newman was not entitled to a
mistrial.

The
trial court=s
denial of a motion for mistrial is reviewed under an abuse of discretion
standard.  Hawkins
v. State, 135 S.W.3d 72, 76B77 (Tex.
Crim. App. 2004).  An appellate
court views the evidence in the light most favorable to the trial court=s
ruling, considering only those arguments before the court at the time of
ruling.  Wead v.
State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).  Under this standard, an appellate court must
uphold a trial court=s ruling if it was within
the zone of reasonable disagreement.  Id.  A mistrial is appropriate only in extreme
cases, where the prejudice is incurable and the Aexpenditure
of further time and expense would be wasteful and futile.@ Hawkins,
135 S.W.3d at 77.

To
determine whether the trial court abused its discretion by overruling a motion
for mistrial, the appellate court must balance three factors: (1) the severity
of the misconduct (the magnitude of the prejudicial effect of the prosecutor=s
comment), (2) any curative measures taken (the effect of any cautionary
instruction by the trial court), and (3) the certainty of conviction absent the
misconduct (the strength of the evidence supporting the conviction).  Mosley v. State, 983 S.W.2d 249, 259
(Tex. Crim. App. 1998), cert. denied, 526 U.S. 1070 (1999).








The
jury is entitled to consider the charge as a whole and is not required to
unanimously agree that a defendant is not guilty of the greater offense before
considering the lesser-included offense. 
Barrios v. State, 283 S.W.3d 348, 349B50
(Tex. Crim. App. 2009).  It is
well established that the prosecutor cannot misstate the law.  See Whiting v. State, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990).

In
the present case, we first consider the severity of the misconduct.  The prosecutor=s
statementCalthough
a misstatement of the law regarding when the jury can consider the
lesser-included offenseCoccurred only once, and
viewing the State=s closing argument as a
whole, we cannot conclude that Athere
was a willful and calculated effort on the part of the State to deprive
[Newman] of a fair and impartial trial.@  Brown v. State, 270 S.W.3d 564, 573
(Tex. Crim. App. 2008) (considering whether State made willful and calculated
error to deprive appellant of fair trial when analyzing
severity-of-the-misconduct factor), cert. denied, 129 S. Ct. 2075
(2009).








Regarding
the second factorCthe curative measures takenCalthough
Newman did not ask for an instruction to disregard, immediately after sustaining
his objection, the trial court took curative action by stating, AThe
jury has been properly instructed in the jury charge.@  See Young v. State, 137 S.W.3d 65, 70
(Tex. Crim. App. 2004) (noting that reversal not warranted when party requests
mistrial without asking for instruction to disregard when event could have been
cured by instruction).  Moreover, the
jury charge correctly set forth the law and instructed the jury, AUnless you
so find beyond a reasonable doubt, or if you have a reasonable doubt thereof,
you will acquit the Defendant of aggravated robbery and next consider the
lesser included offense of aggravated assault.@  See Barrios, 283
S.W.3d at 349B50 (approving of same charge); Hawkins,
135 S.W.3d at 84 (considering proper jury charge in analysis of
curative-measures factor).

Finally,
even without the misstatement of the law, the strength of the evidence
supporting Newman=s conviction was great.  Newman argues that the evidence does not show
that he appropriated any money to support conviction of the greater offense of
aggravated robbery.  But the State was
not required to prove that Newman completed the theft; instead, the State
needed to show only that Newman had the specific intent to commit theft and
that he committed an act that amounted to more than mere preparation.  See Tex. Penal Code Ann. '' 29.01(1),
.02(a), .03(a) (Vernon 2003); Bustamante v. State, 106 S.W.3d 738, 740
(Tex. Crim. App. 2003).  Milan testified
at trial that Newman had repeatedly beat her with a
hammer while saying, AGive me the money.@
Following the robbery, Newman also told his girlfriend, Olivia Allen, that he
had Aattempted
a robbery at a convenience store and had hit a lady repeatedly with a hammer.@  Allen also testified that Newman had
explained that his Asole purpose@ of
going to the store was Ato rob the store, to get the
money.@  The jury saw security video footage of Newman
pressing a button on the cash register in an attempt to obtain money.  Newman=s
intent to commit robbery is thus evidenced by statements he made both during
and after the robbery, and the security videotape demonstrates that Newman=s
actions amounted to more than mere preparation to commit theft.  See Bustamante, 106
S.W.3d at 740.








Balancing
the above factors, we hold that the trial court did not abuse its discretion by
denying Newman=s
motion for mistrial.  See Hawkins,
135 S.W.3d at 77; Mosley, 983 S.W.2d at
259.  We overrule Newman=s
first point.

                               IV. Evidence of Prior Convictions

In
his second point, Newman argues that the trial court abused its discretion
during the punishment phase of trial by admitting State=s
Exhibits 48 and 49Cevidence of two of Newman=s
prior convictionsCbecause the State did not
sufficiently link those prior convictions to him.

An
appellate court reviews a trial court=s
decision to admit evidence over objection under an abuse of discretion standard
and will not reverse that decision absent a clear abuse of discretion.  McCarty v. State,
257 S.W.3d 238, 239 (Tex. Crim. App. 2008); Moses v. State, 105 S.W.3d
622, 627 (Tex. Crim. App. 2003).

To
establish that the defendant was convicted of a prior offense for enhancement
purposes, the State must (1) prove the existence of the conviction and (2) link
the conviction to the defendant.  Flowers
v. State, 220 S.W.3d 919, 921B22
(Tex. Crim. App. 2007); Davis v. State, 268 S.W.3d 683, 715 (Tex. App.CFort Worth  2008, pet. ref=d).  No specific document or mode of proof is
required to prove these two elements.  Flowers,
220 S.W.3d at 921; Paschall v. State, 285 S.W.3d 166, 174 (Tex. App.CFort Worth 2009, pet. ref=d).








The
State may establish a defendant=s
previous conviction through certified copies of a judgment and sentence.  Beck v. State, 719
S.W.2d 205, 209 (Tex. Crim. App. 1986). 
However, the State must provide independent evidence linking these
documents to the defendant on trial.  Id. at 210. 
This is frequently done by expert testimony identifying known
fingerprints of the defendant with the fingerprints in a pen packet, but the
necessary proof may come from other means as well.  Id. 
Courts have identified several other ways in which the link has been
made, including (1) the defendant=s
admission or stipulation, (2) testimony by a person who was present when the
person was convicted of the specified crime and can identify the defendant as
that person, or (3) documentary proof (such as a judgment) that contains
sufficient information to establish both the existence of a prior conviction
and the defendant=s identity as the person
convicted.  Flowers,
220 S.W.3d at 921B22; Beck, 719 S.W.2d at 209B10.  The
evidence used to link a prior crime to a defendant often Aresembles
a jigsaw puzzle.@  Human v. State, 749
S.W.2d 832, 835B36 (Tex. Crim. App. 1988).  AThe
pieces standing alone usually have little meaning.  However, when the pieces are fitted together,
they usually form the picture of the person who committed the alleged prior
conviction or convictions.@  Id. at 836.

Here,
State=s
Exhibits 48 and 49 each consist of certified copies of a docket sheet, a
misdemeanor complaint and information, and a judgment and sentence reflecting a
prior conviction.  Newman=s
unique Criminal Identification Number (ACID
number@) is
located on the misdemeanor complaint and information and on the docket sheet in
each exhibit, but the judgment in each exhibit does not contain his CID
number.  The fingerprints in both
exhibits are illegible.








Newman
specifically complains on appeal that, because the fingerprints in State=s
Exhibits 48 and 49 are illegible and because the judgments in both exhibits do
not contain his unique CID number, the State failed to connect him to those
prior convictions.  However, the judgment
in each exhibit contains the same named defendant, the same cause number, the
same court, and the same charge as contained in the corresponding complaint and
information and on the docket sheet, which do contain Newman=s
unique CID number.  Additionally, the
same information identifying Newman as the defendant in those exhibits is also
contained in State=s Exhibit 45Ca
pen packet evidencing another prior conviction. 
Fingerprint examiner John Pauley testified that fingerprints he took
from Newman prior to trial matched the fingerprints contained in State=s
Exhibit 45.  That exhibit lists the
defendant=s
name as Andrew David Newman and contains Newman=s
physical description, date of birth, and physical address, all of which are
also contained in State=s Exhibits 48 and 49.  State=s
Exhibit 45 also shows that Newman had a prior conviction for assault on a
family member that occurred prior to December 1, 2003Cthe
very same conviction that is reflected in State=s
Exhibit 48.








In
the instant case, looking at all of the Apieces
of the jigsaw puzzle,@ we hold that sufficient
evidence linked Newman to the prior convictions in State=s
Exhibits 48 and 49.  Human, 749
S.W.2d at 835B36;
see Flowers, 220 S.W.3d at 223; Dukes v. State, No. 04-08-00678-CR,
2009 WL 1617665, at *1 (Tex. App.CSan
Antonio June 10, 2009, no pet.) (mem. op., not designated for publication)
(holding that, although fingerprint expert was unable to match fingerprints
contained in exhibit to defendant=s
fingerprints, evidence sufficiently linked defendant when expert matched
fingerprint on judgment contained in another exhibit with defendant=s
fingerprint and when defendant=s
name and CID number appeared in both exhibits); Ortiz v. State, No.
02-07-00397-CR, 2008 WL 4602243, at *2 (Tex. App.CFort
Worth Oct. 16, 2008, pet. ref=d)
(mem. op., not designated for publication) (holding that State sufficiently
linked defendant to prior conviction when his fingerprints matched those on
jail card, which contained same CID number as that on indictment, although
judgment did not contain CID number); Nguyen v. State, Nos. 13‑02‑00645‑CR,
13‑02‑00646‑CR, 2004 WL 1834404, at *3 (Tex. App.CCorpus
Christi Aug. 12, 2004, no pet.)  (mem.
op., not designated for publication) (referring to
appellant=s
unique SPN number as evidence linking appellant to prior convictions).  Accordingly, we hold that the trial court did
not abuse its discretion by admitting State=s
Exhibits 48 and 49 because the State sufficiently linked them to Newman.  See McCarty, 257
S.W.3d at 239; Moses, 105 S.W.3d at 627.  We overrule Newman=s
second point.

V. No
Comment on Failure to Testify

In
his third point, Newman argues that the trial court erred by overruling his
objection to the State=s comment on his failure to
testify during the punishment phase of his trial.  Specifically, Newman complains that the State=s
questioning of Dr. James Womack improperly referred to Newman=s
lack of remorse and constituted a comment on his failure to testify.








During
the State=s
cross examination of Dr. Womack, Dr. Womack discussed the characteristics of
antisocial personality disorder and concluded that Newman had all but one of
the characteristics of that disorder; he could not say for certain whether
Newman met the final characteristicCindifference
to hurting and mistreating others.  The
following exchange then occurred:

[Prosecutor]:
You=re aware that the
assault in this case was committed with a hammer, correct?

 

[Dr.
Womack]: Yes

 

[Prosecutor]:
Now let me show you what is marked State=s
Exhibit 18.  Are you aware that
this is the hammer used to commit the assault?

 

[Dr.
Womack]: If it=s been proven, I=ll accept that, yeah.

 

[Prosecutor]:
Now, let me show you some photographs, State=s Exhibits 24, 28, 27. And I=m going to represent
to you the white shards there are bone.

 

[Dr.
Womack]: Looks like bone, doesn=t it?

 

[Prosecutor]:
Yes.  Twenty-six you see an injury to the
temple area there?

 

[Dr.
Womack]: Severe separation.

 

[Prosecutor]:
And you can=t tell much because
of the hair, but State=s Exhibit 25C 

 

[Dr.
Womack]: Yes.

 

[Prosecutor]:
Would you agree with me that if a person=s capable of inflicting that kind of harm on
a human being and then walking away at an even pace, absolutely expressionless,
and leaving that person to whatever their fate may be, that shows a certain
lack of remorse forC 

 








[Defense
Counsel]: Objection.  Comment on failure
to testify, Your Honor.

 

[Prosecutor]:
I=m asking about
conduct, Your Honor.

 

[Defense
Counsel]: Objection.  Comment on failure
to testify.

 

[The
Court]: I=m going to overrule
the objection at this time.

 

[Prosecutor]:
Would you say the pattern of behavior or conduct I=m describing to you
shows a certain lack of remorse or indifference to hurting or mistreating
others?

 








The
code of criminal procedure provides that a defendant=s
failure to testify on his own behalf may not be held
against him and that counsel may not allude to the defendant=s
failure to testify.  Tex.
Code Crim. Proc. Ann. art. 38.08 (Vernon 2005).  To determine whether a prosecutor=s
comment violated article 38.08 and constituted an impermissible reference to an
accused=s
failure to testify, we must decide whether the language used was manifestly
intended or was of such a character that the jury naturally and necessarily
would have considered it to be a comment on the defendant=s
failure to testify.  Id.; see
Bustamante, 48 S.W.3d at 765; Fuentes v. State, 991 S.W.2d 267, 275
(Tex. Crim. App.), cert. denied, 528 U.S. 1026 (1999).  The offending language must be viewed from
the jury=s
standpoint, and the implication that the comment referred to the accused=s
failure to testify must be clear.  Bustamante,
48 S.W.3d  765; Swallow
v. State, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992). A mere indirect or
implied allusion to the defendant=s
failure to testify does not violate the accused=s
right to remain silent.  Wead, 129
S.W.3d at 130; Patrick v. State, 906 S.W.2d 481, 490B91
(Tex. Crim. App. 1995), cert. denied, 517 U.S. 1106 (1996).

Generally,
a prosecutor may not argue that the accused has not shown remorse or shame
because this calls the jury=s
attention to the absence of testimony that only the accused can supply.  Swallow, 829 S.W.2d at 225B26; Dickinson
v. State, 685 S.W.2d 320, 323 (Tex. Crim. App. 1984).  However, an exception to the general rule
applies if there is evidence in the record that supports a comment regarding
the defendant=s
failure to show remorse; in that case, the comment is a proper summation of the
evidence.  Howard v. State, 153
S.W.3d 382, 385B86 (Tex. Crim. App. 2004)
(holding that State=s argument was proper
summation of evidence when evidence showed defendant had told officer that he
had no remorse), cert. denied, 546 U.S. 1214 (2006); Caldwell v.
State, 818 S.W.2d 790, 800 (Tex. Crim. App. 1991) (explaining that jury could
have interpreted State=s comment on lack of remorse
as reference to witness=s testimony of defendant=s Acalm
demeanor@
after murder), cert. denied, 503 U.S. 990 (1992), overruled on other
grounds by Castillo v. State, 913 S.W.2d 529 (Tex. Crim. App.
1995).  Witnesses may testify as to the
defendant=s
statements and conduct indicating a lack of remorse.  Oliva v. State, 942 S.W.2d 727, 734
n.2 (Tex. App.CHouston
[14th Dist.] 1997), pet. dism=d,
991 S.W.2d 803 (Tex. Crim. App. 1998).








In
the present case, the State was simply asking an expert witness whether, in his
opinion, Newman=s conduct indicated a lack
of remorse and was therefore consistent with the characteristics of antisocial
personality disorder. Prior to Dr. Womack=s
testimony, an eyewitness testified that she had seen Newman walk out of the
store at a calm pace while carrying a hammer and that his face was
expressionless.  The State was drawing on
this prior testimony to question Dr. Womack about a characteristic of
antisocial personality disorder by asking him whether such actions would show a
lack of remorse.  We hold that the
prosecutor=s
question to Dr. Womack was not manifestly intended nor was of such a character
that the jury naturally and necessarily would have considered it to be a
comment on Newman=s failure to testify.  See Bustamante, 48 S.W.3d at
765; see also Ladd v. State, 3 S.W.3d 547, 569 (Tex. Crim. App. 1999)
(holding jury could have interpreted State=s
comment on lack of remorse as referring to psychiatrist=s
testimony that appellant had anti-social personality disorder and had no
remorse for his crimes), cert. denied, 529 U.S. 1070 (2000); Fearance
v. State, 771 S.W.2d 486, 514 (Tex. Crim. App. 1988) (holding State=s
argument was not a comment on failure to testify but rather a summation of the
evidence provided by a psychiatrist that personalities like appellant=s
show no remorse), cert. denied, 492 U.S. 927 (1989).  Accordingly, we hold that the trial court did
not err by overruling Newman=s
objection to the complained-of comment. 
We overrule Newman=s third point.








VI. Conclusion

Having
overruled Newman=s three points, we affirm
the trial court=s judgment.  

 

SUE WALKER

JUSTICE

 

 

PANEL:
DAUPHINOT, WALKER, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:
July 1, 2010











[1]See Tex. R. App. P.
47.4.